UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TIMOTHY B. SPISAK | CIVIL ACTION NO. 15-CV-02305 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| APACHE CORPORATION, ET AL. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Two motions for summary judgment are currently pending that present the same issue: whether Louisiana state law applies in this case through the operation of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq*. The first motion (Rec. Doc. 78) was filed by defendants Williams Field Services Group, LLC and Eni US Operating Co. Inc., and the second motion was filed by defendant Stella Maris, LLC (Rec. Doc. 92). The plaintiff opposes both motions, arguing that maritime law applies. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the court finds that Louisiana law applies to the issues presented in this case, and both motions are granted.

### BACKGROUND

The following facts are not in dispute. In May 2015, Mr. Spisak was employed by Greene's Energy Services, LLC as a helper. Greene's entered into a contract with Apache Corporation, whereby Greene's would provide workers and equipment to flush a pipeline on an offshore platform so that an Apache oil well on the platform

could be plugged and abandoned. Apache also contracted with Stella Maris, LLC to provide an individual, Brian Ray, to accompany the Greene's crew to the platform and assist with the flushing operation. The flushing project was called the "Bass Lite Project," and it took place on an oil and gas production platform in the Gulf of Mexico called Devil's Tower Spar. Devil's Tower is a fixed platform with no means of propulsion that is located in the Gulf of Mexico at Mississippi Canyon Block 773 on the Outer Continental Shelf approximately 140 miles off the coast of Louisiana. Williams is the owner of the Devil's Tower platform and Eni is the operator of Devil's Tower.

Greene's sent a crew of five men, including Mr. Spisak, to Devil's Tower to perform the flushing operation. The crew's supervisor was Greene's employee Matthew Breaux. Mr. Spisak reported directly to Mr. Breaux, and Mr. Breaux had ultimate supervisory control over Mr. Spisak's work. The Greene's crew arrived at Devil's Tower on May 6, 2015. They rigged up their equipment and conducted the flushing operation. Mr. Spisak claims that he was injured on May 18, 2015, as the crew was rigging-down their equipment at the end of the job. As Mr. Spisak and another member of the Greene's crew were carrying a ten-foot-long section of chicksan pipe, Mr. Spisak either tripped or was pushed by the other Greene's employee on the deck of the fixed platform.

## ANALYSIS

### A.   THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[2]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[3]

### B.   THE BASIS OF THIS COURT'S JURISDICTION IS NOT THE GENERAL MARITIME LAW

---

[1]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2]   *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[3]   *Washburn v. Harvey*, 504 F.3d at 508.

In his original and first amended complaint, as well as in his inserts to the Rule 26(f) report, the plaintiff alleged that jurisdiction fell under the general maritime law and the Longshore and Harborworker's Compensation Act, specifically 33 U.S.C. §905(b). The plaintiff further designated his claim as a claim in admiralty under Fed.R.Civ.P. 9(h). In his second amended complaint the plaintiff alleged "[p]laintiff's claims fall under the General Maritime Law of the United States and the Longshore and Harborworkers' Compensation Act ("LSHWA") as plaintiff's duties included the loading and unloading of vessels from the Devil's tower, an offshore platform. Plaintiff is also deemed a longshoreman by virtue of the Outer Continental Shelf Land (sic) Act, 43 U.S.C. Section 1333(b)."

In their inserts to the Rule 26(f) report the defendants submitted that the Court did not have jurisdiction under the general maritime law or 905(b), but pursuant to the Outer Continental Shelf Lands Act (OCSLA), specifically 43 U.S.C. § 1349 and/or §1333, and 28 U.S.C. § 1331. They further asserted that plaintiff's claims arise under OCSLA and the law of the adjacent state, Louisiana, entitled them to trial by jury.

"A party seeking to invoke federal admiralty jurisdiction under 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the

tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."[4]

It is also well-settled law that the LHWCA, specifically, 33 U.S.C. §905(b), does not "create a new or broader cause of action in admiralty than that which previously existed. . . To be cognizable under § 905(b), a tort must occur on or in navigable waters subject, of course, to the provisions of the Admiralty Extension Act, and there must be the traditional admiralty nexus."[5]

It is undisputed that the tort alleged in this case did not occur on navigable water. It is also undisputed that this "platform-located" incident was not caused by a vessel on navigable water such that the Admiralty Extension Act might apply. Therefore, this Court does not have jurisdiction under the general maritime law.

While the plaintiff does not correctly invoke OCSLA for jurisdictional purposes, 'because jurisdiction is invested in the district courts by [the OCSLA jurisdictional] statute '[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply.'"[6] The jurisdictional statute provides federal district courts with

---

[4] *Grubart v. Great Lakes Dredge and Dock,* 513 U.S. 527, 534 (1995).

[5] *Richendollar v. Diamond M Drilling Co. Inc.* 819 F.2d. 124, 125 (5th Cir. 1987) (en banc).

[6] *In re Deepwater Horizon,* 745 F.3d 157, 163 (5th Cir. 2014), *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).

jurisdiction over " cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . ."[7] "OCSLA asserts exclusive federal question jurisdiction over the OCS by specifically extending '[t]he Constitution and laws and civil and political jurisdiction of the United States ... [to the OCS] and all installations and other devices permanently or temporarily attached to the seabed . . . for the purpose of exploring for, developing, or producing resources therefrom.'"[8]

In *Deepwater Horizon,* the most recent Fifth Circuit case where the court was called upon to determine if OCSLA jurisdiction was present, the court applied a "but-for" two-pronged test asking whether: (1) the activities that caused the injury constituted an "operation" "conducted on the outer Continental Shelf" that involved the exploration and production of minerals, and (2) the case "arises out of, or in connection with" the operation.[9]

---

[7] 43 U.S.C. §1349(b)(1).

[8] *Barker*, 713 F.3d at 213 *citing* 43 U.S.C. §§ 1332(1), 1333(a)(1), 1349(b)(1) and *Recar v. CNG Producing Co.*, 853 F.2d 367, 370 (5th Cir. 1988).

[9] *Deepwater Horizon*, 745 F.3d at 163 *citing EP Operating Ltd.,* 26 F.3d at 568-569.

Based on the allegations of the complaint, as amended, and the undisputed facts which this Court may consider in aid of determining its jurisdiction, there is no viable argument to counter the application of OCSLA's jurisdictional statute to vest this Court with subject matter jurisdiction. Therefore, the Court finds that its subject matter jurisdiction is based on 33 U.S.C. §1349. However, that does not end the inquiry into the applicable substantive law.

## C. LOUISIANA LAW, AS THE LAW OF THE ADJACENT STATE, APPLIES AS THE SUBSTANTIVE LAW IN THIS CASE.

Once it is determined that a federal court has jurisdiction under OCSLA, the court must then examine the OCSLA choice of law provision and decide whether state, federal, or maritime law applies to that particular case.[10] In 43 U.S.C. § 1333(a)(2)(A), OCSLA states that

> [t]o the extent that they are applicable and not inconsistent. . ., the civil and criminal laws of each adjacent State. . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf. . . .[11]

---

[10] *Petrobras America, Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215 (5th Cir. 2016); *In re DEEPWATER HORIZON*, 745 F.3d at 164.

[11] 43 U.S.C. § 1333(a)(2)(A).

Therefore,

> for adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant. (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.[12]

In this case, all three of those conditions are satisfied.

First, the incident in which Mr. Spisak was allegedly injured occurred on an OCSLA situs. Devil's Tower is an oil and gas production platform with no means of propulsion that is attached to the seabed off the coast of Louisiana,[13] and it is not a vessel.[14]

Second, federal maritime law does not apply on its own. "OCSLA Section 1333(a)(1) and admiralty law constitute alternative, not overlapping, regimes of federal law."[15] "In order for maritime law to apply to an OCSLA tort action such as

---

[12] *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

[13] Rec. Doc. 78-3 at 2.

[14] *J. Ray McDermott Engineering, L.L.C. v. Fugro-McClelland Marine Geosciences, Inc.*, No. 04-1335, 2007 WL 763716, at *1 (E.D. La. Mar. 8, 2007).

[15] *In re DEEPWATER HORIZON*, 745 F.3d at 166.

this one, there must be both a 'maritime situs and a connection to traditional maritime activity.'"[16]

This Court has already found that the first criteria is not met in this case in the context of determining its jurisdiction. An incident that occurs on a fixed offshore oil production platform does not meet the situs requirement.[17] In this case, there was no vessel involved in the accident. Accordingly, the location test is not satisfied.

The plaintiff argued, however, that the location test is satisfied because the incident occurred at "a portion of the Devil's Tower used to load and unload vessels given the reach of the platform's cranes." (Rec. Doc. 86 at 4). The plaintiff's argument conflates the requirements *for situs to invoke coverage under the LHWCA* with the requirements for the applicability of the general maritime law in a tort context. A person is covered by the LHWCA if his "disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing,

---

[16] *Barker v. Hercules Offshore, Inc.*, 713 F.3d at 215 (quoting *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 351 (5th Cir. 1999)).

[17] *Thibodeaux v. Grasso Production Management Inc.*, 370 F.3d 486, 494 (5th Cir. 2004); *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 351 (5th Cir. 1999).

dismantling, or building a vessel.)"[18]  The LHWCA situs test for coverage under the LHWCA is thus broader than the locality test used to determine whether general maritime law applies, and it is conceivable that a person might be on a situs covered by the LHWCA but sustain injuries in an accident that does not occur at a location that mandates the applicability of the general maritime law.  In fact, that is exactly what happened in this case.  Accordingly, the plaintiff's argument lacks merit and the Court need not address whether the activity engaged in by the plaintiff at the time of the accident had a sufficient connexity to traditional maritime activity. Since the location test is not satisfied, maritime law does not apply on its own to the dispute underlying this lawsuit.

The third requirement for the application of state law is that state law not be inconsistent with federal law.  "It has been recognized by the Supreme Court that unless a federal law is applicable to the particular case, the state law is not inconsistent with it."[19]  In this case, maritime law is not applicable to the plaintiff's claims, Louisiana law is adopted as surrogate federal law, and any differences between Louisiana law and federal law are not inconsistencies for the purpose of

---

[18]    33 U.S.C. § 903(a).

[19]    *English v. Wood Group PSN, Inc.*, No. 15-568, 2015 WL 5061164, at *7 (E.D. La. Aug. 25, 2015) (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 103-04 (1971)).

determining whether the OCSLA's choice of law provision governs. Furthermore, the Fifth Circuit has expressly held that even when the plaintiff is covered under the LHWCA, (as is the case here by operation of OCSLA) and Louisiana law provides the substantive cause of action against a third party, i.e. the defendants here none of whom constitute a vessel, Louisiana law also governs the question of whether proportionate liability rather than joint-and-several liability applies, and there is no inconsistency with federal law.[20] Because only Louisiana law applies, there similarly is no conflict as to the availability of punitive damages in connection with the plaintiff's alleged injuries. Therefore, the third requirement for the application of Louisiana law is satisfied.

## CONCLUSION

For the foregoing reasons, and finding no genuine issues of material fact to be resolved, the court finds that Louisiana law applies to the parties' dispute. Accordingly,

IT IS ORDERED that the motion for summary judgment filed by defendants Williams Field Services Group, LLC and Eni US Operating Co. Inc. (Rec. Doc. 78) and the motion for summary judgment filed by defendant Stella Maris, LLC (Rec. Doc. 92) with regard to the applicability of Louisiana state law are GRANTED.

---

[20] *Fontenot v. Dual Drilling Co.*, 179 F.3d 969, 976 (5th Cir. 1999).

IT IS FURTHER ORDERED that the oral argument on these two motions, which was previously scheduled for March 23, 2017, is CANCELED.

Signed at Lafayette, Louisiana on this 8th day of March 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE