UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TIMOTHY B. SPISAK                           CIVIL ACTION NO. 15-CV-02305

VERSUS                                      MAGISTRATE JUDGE HANNA

APACHE CORPORATION, ET AL.         BY CONSENT OF THE PARTIES

### MEMORANDUM  RULING

Currently pending is defendant Apache Corporation's motion for summary
judgment. (Rec. Doc. 91).  Considering the evidence, the law, and the arguments of
the parties, and for the reasons fully explained below, this Court grants Apache's
motion and dismisses the plaintiff's claims against Apache with prejudice.

### BACKGROUND

The following facts are undisputed.  This case arises out of an incident that
allegedly occurred in May of 2015 aboard a fixed SPAR oil and gas production
platform known as Devil's Tower, which is located on the outer continental shelf off
the coast of Louisiana.  Devil's Tower has no means of propulsion and is connected
to the seabed by a mooring system consisting of chains, cables, and piles or caissons
embedded into the ocean floor.  Codefendants Williams Field Services, LLC is the
owner of the Devil's Tower platform and Eni US Operating Co. Inc. was the operator
aboard Devil's Tower at all relevant times.  Apache is the owner of a well that was
tied into Devil's Tower by pipeline.

In July 2005, Apache and codefendant Stella Maris, LLC entered into a Master Service Contract, under which Apache hired Stella Maris to perform certain work or render certain services as set forth in separate job orders.  Under Section 7 of the contract, Stella Maris was designated as an independent contractor not subject to the control or direction of Apache.  While Stella Maris controlled the manner and methods by which it performed its work under the contract, Apache was only interested in the compliance of the work with the job order.

In August 2012, Apache and Greene's Energy Group, the plaintiff's employer, entered into a Master Service Contract.  Under Section 2, Apache hired Greene's to perform certain work to support Apache's "onshore and offshore exploration and production business" as provided in subsequent job orders.  Section 8 of the contract specified that Greene's "shall be, and perform at all times as, an independent contractor."  Greene's was not subject to the control or direction of Apache as to the details of the work performed by Greene's.  Apache was only interested in whether the work performed by Greene's complied with the job order.

In the spring of 2015, Apache hired Greene's to flush out the Bass Lite pipeline from the Devil's Tower platform and prepare it to be plugged and abandoned.  It was up to Greene's to determine what personnel and equipment it needed to do the job. Greene's was responsible for rigging up and rigging down its equipment under the

supervision of a Greene's supervisor who directed the Greene's crew.  Greene's sent a crew of five men, including Mr. Spisak, to Devil's Tower to perform the flushing operation.  Mr. Spisak was employed by Greene's as a helper.  The crew's supervisor was a Greene's employee, Matthew Breaux.  Mr. Spisak reported directly to Mr. Breaux, and Mr. Breaux had ultimate supervisory control over Mr. Spisak's work.

The Greene's crew arrived at Devil's Tower on May 6, 2015.  Sometimes utilizing the cranes aboard the platform and sometimes not, they rigged up their equipment and conducted the flushing operation.  However, the line hydrated, which created an ice plug such that the flushing operation could not be completed.  At that point, the Greene's crew had to rig down their equipment and prepare to disembark the platform.

Mr. Spisak claims that he was injured on May 18, 2015, as the crew was rigging down their equipment.  It is undisputed that there were cranes aboard the platform available for use by the Greene's crew.  However, other contractors aboard the platform were also utilizing the cranes as simultaneous operations ("SIMOPS") were ongoing.  Therefore, if the crane was in use by some other contractor, the Greene's crew would have to simply wait on its availability.  On the date of the alleged accident, the Greene's crew did not wait on the availability of a crane and

conducted at least some of the rigging down procedure, including the movement of chicksan pipe, by hand.

As Mr. Spisak and another member of the Greene's crew were carrying a ten-foot-long section of chicksan pipe, Mr. Spisak tripped and was then pushed by the other Greene's employee on the opposite end of the pipe.  At that precise moment, Mr. Spisak was not watching his feet.  He may have tripped over some of Greene's equipment, either another length of chicksan pipe or a hose.  It is undisputed, however, that he did not trip over any equipment that was owned by Apache.

Apache did not have any employees on the platform at any time during the flushing project, and Apache did not exercise any control over the details of the work performed by Greene's.  The crew from Greene's performed the work while Brian Ray, a Stella Maris employee, verified that the job was completed to the appropriate specifications.  There is no evidence in the record that Apache directed the Greene's crew to move the chicksan pipe by hand, or that Apache was even aware that the operation was being undertaken in that manner at the time.  While the plaintiff alleged that Mr. Ray ordered the plaintiff to carry the pipe by hand, there is no evidence that anybody from Apache did so, or that anybody from Apache provided any other instructions in rigging down or moving the equipment.  In addition, there is no evidence in this record that Greene's was told by anyone with Apache that Greene's

-4-

could not use the crane.  On the contrary, the testimony submitted is consistent that Apache did not prevent the Greene's crew from using the crane at any time.

## ANALYSIS

### A.   THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the

---

[1]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

existence of a genuine issue of a material fact.[4]  All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6]  The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

**B.    LOUISIANA LAW GOVERNS THE CLAIMS AGAINST APACHE**

Jurisdiction in this case is premised on the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA").[8]  As set forth in this Court's memorandum ruling on the motions for summary judgment concerning the applicable substantive law, pursuant to OCSLA, the law of Louisiana, as the adjacent state, governs the plaintiff's claims against Apache as the controversy arises on a situs covered by the

---

[4]      *Washburn v. Harvey*, 504 F.3d at 508.

[5]      *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8]      43 U.S.C. §1349.

-6-

OCSLA, maritime law does not apply of its own force, and Louisiana law is not inconsistent with federal law.[9]

Under Louisiana law, a principal is not liable for the offenses of an independent contractor in performing its contractual duties unless the independent contractor is performing ultrahazardous activities, or if the principal exercises operational control over the work performed by the independent contractor.[10]

## C. THERE IS NO EVIDENCE THAT APACHE EXERCISED OPERATIONAL CONTROL OVER THE INDEPENDENT CONTRACTORS NOR WAS APACHE INDEPENDENTLY NEGLIGENT

There is no allegation that any of the work being performed by Greene's was ultrahazardous; therefore, in order for Apache to be liable either for the alleged negligent actions of Greene's or Stella Maris, the plaintiff must show that Apache exercised operational control over the work they performed.  The deposition testimony is consistent that Apache did not exercise such control, and the contracts specifically indicate that Apache did not intend to do so.  Therefore, assuming for the sake of argument that either Greene's or Stella Maris were negligent, the plaintiff has failed to meet his burden to show that a genuine issue of fact exists that there was a

---

[9]      43 U.S.C. 1333(a); *Union Texas Petroleum v. PLT Engineering, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990).

[10]      *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549-550 (5th Cir. 1987).

degree of control exercised by Apache such that Apache would be liable for that negligence.

The plaintiff contends in opposition that Apache had independent negligence which would render it liable to the plaintiff.  Specifically, the plaintiff contends that Apache "knowingly plac[ed] plaintiff and his co-workers in a work environment deemed a 'cluster' by Apache's on site contract company man . . . without warning plaintiff and his co-workers of the known dangers they faced."  The plaintiff further contends that Apache gave "its express or implied authorization for Greene's employees to engage in unsafe work practices given that Apache knew Greene's would not have access to the platform's cranes."  These contentions have no merit.

Aside from the fact there is no evidence as to what was meant by a "cluster" set forth in an email communication, there were no Apache employees on the platform at any time, and therefore, there is no evidence that Apache had any knowledge of "dangers" faced by the plaintiff when the Greene's crew was rigging down its equipment.  Rather, the uncontroverted evidence is that Apache was not there and did not prevent the Greene's crew from utilizing the crane at any time.

The plaintiff argues, incorrectly, that Apache was operating under some kind of rush by the federal government.  There is no competent evidence to support such an assertion.  Further, the undisputed facts are that this alleged accident occurred

during the rig down procedure when the job could not be completed due to an ice plug in the pipeline.  There was no deadline imposed by any agency for removing the Greene's personnel or equipment from the platform, and Greene's had no other work to do that involved getting the well plugged and abandoned.

Second, the plaintiff argues that Greene's was rushing to take advantage of a "free" boat ride.  The testimony belies such an argument.  There is no evidence whatsoever that Apache authorized, implicitly or expressly, Greene's to utilize unsafe work methods to rig down its equipment in order to take advantage of transportation options.

Finally, the assertion that a dedicated crane operator specifically for use by Greene's personnel was to be available is not supported by competent summary judgment evidence and ignores the reality of the work environment.  The platform personnel included a crane operator who was available for use by all of the contractors.  Greene's had access to the crane and its operator, but the practicality of SIMOPS was that Greene's may have had to wait its turn to use the crane if the crane was engaged in other operations.  The decision to wait or not was not made or authorized by anyone with Apache, and there is no evidence that Apache had any knowledge of the conditions as they existed at the time of the plaintiff's accident.

-9-

The plaintiff has failed to meet his burden to show that there was any duty owed to the plaintiff in the context of this case that Apache somehow breached. Therefore, Apache is entitled to judgment as a matter of law and the plaintiff's claims against it will be dismissed with prejudice.

## **CONCLUSION**

The plaintiff was employed by an independent contractor of Apache.  The company representative was also employed by an independent contractor of Apache. The evidence is uncontroverted that Apache had no control over the details of the work performed by either of them.  As the work was not ultrahazardous, Apache is not liable for any alleged negligence by Greene's or Stella Maris.

There is no evidence that Apache had any knowledge of the decision not to wait to utilize the crane to lift the chicksan pipe.  Likewise, there is no evidence that Apache in any way authorized or directed the Greene's crew not to utilize the crane or that Apache in any way prevented Greene's from utilizing the crane.

Therefore, the plaintiff has failed to show that there is a genuine issue for trial as to the liability of Apache.  Accordingly,

IT IS ORDERED that Apache's motion for summary judgment (Rec. Doc. 91) is GRANTED, and the plaintiff's claims against Apache are DISMISSED WITH PREJUDICE.

-10-

IT IS FURTHER ORDERED that the oral argument on Apache's motion, which was previously scheduled for March 23, 2017, is CANCELED.

Signed at Lafayette, Louisiana on this 10th day of March 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE