UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TIMOTHY B. SPISAK                    CIVIL ACTION NO. 15-CV-02305

VERSUS                               MAGISTRATE JUDGE HANNA

APACHE CORPORATION, ET AL.           BY CONSENT OF THE PARTIES

### MEMORANDUM  RULING

Currently pending is the motion for partial summary judgment (Rec. Doc. 90), which was filed by defendants Apache Corporation; Stella Maris, LLC; Siren Oilfield Services; Williams Field Services Group, LLC; and Eni US Operating Co. Inc., regarding the plaintiff's claim for the recovery of future medical expenses.[1]  The motion is opposed.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is denied.

### BACKGROUND

In May 2015, Mr. Spisak was employed by Greene's Energy Services, LLC as a helper.  Greene's entered into a contract with Apache Corporation, whereby Greene's was to provide workers and equipment to flush a pipeline on an offshore platform so that an Apache well on the platform could be plugged and abandoned. Apache also contracted with Stella Maris, LLC to provide an individual, Brian Ray, to accompany the Greene's crew to the platform and assist with the flushing

---

[1]      As of the time of this ruling Apache has been dismissed by summary judgment.

operation.  The flushing project was called the "Bass Lite Project," and it took place on an oil and gas production platform called Devil's Tower which is located at Mississippi Canyon Block 773 on the Outer Continental Shelf approximately 140 miles off the coast of Louisiana.  Williams is the owner of Devil's Tower and  Eni is the operator.

Greene's sent a crew of five men, including Mr. Spisak, to Devil's Tower to perform the flushing operation.  Mr. Spisak claims that he was injured on May 18, 2015, when he and another member of the Greene's crew were carrying a ten-foot-long section of chicksan pipe and he tripped and then was pushed by the other crew member carrying the pipe.

## ANALYSIS

### A.    THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

applicable governing law.[2]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[3]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[4]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[5]  All facts and inferences are construed in the light most favorable to the nonmoving party.[6]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[2]      *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[3]      *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[4]      *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[5]      *Washburn v. Harvey*, 504 F.3d at 508.

[6]      *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

claim.[7]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[8]

## B.   SHOULD THE PLAINTIFF'S CLAIM FOR FUTURE MEDICAL EXPENSES BE DISMISSED?

The plaintiff contends that he injured his neck and back in the incident of May 18, 2015.  He seeks to recover future medical expenses and other damages.  To do so, he must establish a causal relationship between the accident and the alleged injury by proving through medical testimony that it is more probable than not that the injury was caused by the accident.[9]   Then, the plaintiff must also prove that the need for future medical treatment is more probable than not and establish the probable cost of any such likely treatment.[10]

The plaintiff initially treated with Dr. David Muldowny, a spine surgeon with Lafayette Bone & Joint Clinic.  On January 6, 2016, Dr. Muldowny recommended that the plaintiff undergo a cervical fusion.[11]   The plaintiff stopped treating with Dr.

---

[7]     *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[8]     *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[9]     *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615, p. 3 (La. 02/20/95), 650 So.2d 757, 759.

[10]    *Menard v. Lafayette Ins. Co.*, 2009-1869 (La. 03/16/10), 31 So.3d 996, 1006.

[11]    Rec. Doc. 90-2 at 3.

Muldowny before the surgery was performed.  The plaintiff then began treating with Dr. Najeeb Thomas.  Dr. Thomas recommended that the plaintiff undergo a lumbar fusion procedure, but the plaintiff's worker's compensation carrier denied coverage for the surgery.[12]  The plaintiff is currently treating with Dr. Alan Appley. Dr. Appley has recommended that the plaintiff undergo a two-level anterior lumbar interbody fusion with pedicle screws.[13]

The defendants conducted surveillance of the plaintiff, and they presented portions of the surveillance videotape to Dr. Muldowny at his deposition.  Dr. Muldowny then testified that he would not recommend surgery for someone who is as functional as the plaintiff appeared to be in the surveillance footage.[14]

Portions of the surveillance tape were also shown to Dr. Thomas during his deposition.  At that time, he had not seen the plaintiff for a period of approximately five months.  He testified that, although he had previously recommended surgery, he would not perform surgery on a patient he had not seen for that period of time. Instead, he would again examine the patient, and evaluate whether his symptoms had changed, worsened, or improved, and determine whether surgery was still

---

[12]     Rec. Doc. 90-3 at 4.

[13]     Rec. Doc. 112-1 at 1.

[14]     Rec. Doc. 90-2 at 7.

recommended.[15]  Therefore, his surgical recommendation has not been completely withdrawn.

The defendants argued in support of their motion that because Dr. Muldowny and Dr. Thomas no longer recommend surgery for the plaintiff, the plaintiff consequently has no viable claim for future medical expenses.  This argument lacks merit.

The court is unwilling to preclude recovery for a category of injury-related damages without first having any or all of the plaintiff's treating physicians testify at trial.  The evidence presented by the defendants in support of their motion does not foreclose the possibility that, even if no surgery is ultimately recommended by any of the plaintiff's treating physicians, other types of future treatments might be recommended, such as prescription medications for inflammation or pain relief, physical therapy, or routine follow-up visits, thus establishing that the plaintiff is entitled to recover for future medical expenses even if he is not entitled to recover the cost of a surgical procedure.  Further, the record currently shows that there is a surgical recommendation from Dr. Appley and the possibility of a surgical recommendation from Dr. Thomas.  In light of the existence of surveillance video that allegedly shows the plaintiff engaging in physical activities inconsistent with his

---

[15]     Rec. Doc. 90-3 at 10-11.

alleged injury, the court anticipates that the defendants will seek to have the surveillance footage presented to Dr. Appley.  At the current time, the reaction of Dr. Muldowny to the surveillance footage creates a genuinely disputed issue concerning whether any recommended surgery is medically necessary.   However, Dr. Muldowny's reaction to the videotape does not foreclose the possibility that Dr. Appley – and possibly Dr. Thomas – will offer evidence at trial establishing the need for future medical treatment, whether in the nature of surgery or otherwise. Accordingly, the defendants have not satisfied their burden of showing that there is no genuine dispute as to any material fact and that the moving parties are entitled to judgment in their favor as a matter of law.

Additional issues raised by the defendants in their reply brief, including the timeliness of Dr. Appley's surgical recommendation and cost estimate as well as the causal connection between his surgical recommendation and the plaintiff's accident are reserved for another day.

### CONCLUSION

For the foregoing reasons, the court finds that the moving parties, Apache Corporation; Stella Maris, LLC; Siren Oilfield Services; Williams Field Services Group, LLC; and Eni US Operating Co. Inc., are not entitled to partial summary

judgment with regard to the issue of the plaintiff's claim for future medical expenses.

Accordingly,

IT IS ORDERED that the defendants' motion for partial summary judgment (Rec. Doc. 90) is DENIED.

IT IS FURTHER ORDERED that oral argument on the motion, which was previously scheduled for March 23, 2017, is CANCELED.

Signed at Lafayette, Louisiana on this 14th day of March 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE