UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TIMOTHY B. SPISAK                    CIVIL ACTION NO. 15-CV-02305

VERSUS                               MAGISTRATE JUDGE HANNA

APACHE CORPORATION, ET AL.           BY CONSENT OF THE PARTIES

## MEMORANDUM  RULING

Currently pending is defendant Siren Oilfield Services L.L.C.'s motion for summary judgment.  (Rec. Doc. 99).  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court grants Siren's motion and dismisses the plaintiff's claims against Siren with prejudice.

## BACKGROUND

The following facts are undisputed.  This case arises out of an incident that allegedly occurred in May of 2015 aboard a fixed SPAR oil and gas production platform known as Devil's Tower, which is located on the outer continental shelf off the coast of Louisiana.  Devil's Tower has no means of propulsion and is connected to the seabed by a mooring system consisting of chains, cables, and piles or caissons embedded into the ocean floor.  Codefendant Williams Field Services, LLC is the owner of the platform and codefendant Eni US Operating Co. Inc. was the operator.

Apache Corporation[1] is the owner of a well called Bass Lite that was tied into Devil's Tower by pipeline.  The well was in the process of undergoing plug and abandonment operations at the time of the plaintiff's alleged accident.

Siren initially contracted with Eni to act as operations coordinator for work on another well; however, Eni enlisted the assistance of a Siren employee, Jim Leger, to perform what was described as clerical work.  Mr. Barry Soileau, who was a production manager for Eni, testified that Mr. Leger was to "act as liaison on the safety side between Eni . . .the rig personnel, the construction personnel and whatever other discipline was performing any activities out there *relative to work permits being issued and safety meetings and coordinating all of those disciplines and their JSA's*."[2]  According to Mr. John Randall, the production supervisor for Eni who was the "ultimate work authority," Mr. Leger's responsibilities included preparing Unit Work Permits, collecting the Job Safety Analyses ("JSA") from the contractors that related to the permitted work, and then providing the JSA and Permit to Eni for approval.[3]  Mr. Leger's job responsibilities did not include evaluating the safety

---

[1]    The plaintiff's claims against Apache Corporation were previously dismissed.  (Rec. Doc. 91).

[2]    Rec. Doc. 120-2, p. 2. (emphasis added).

[3]    Rec. Doc. 99-8, pp. 2-97; Rec. Doc. 120-1 pp. 2-3.

aspects of a JSA nor did anyone with Siren have authority to approve or execute Eni work permits.[4]

In August 2012, Apache and Greene's Energy Group, the plaintiff's employer, entered into a Master Service Contract.  Under Section 2, Apache hired Greene's to perform certain work to support Apache's "onshore and offshore exploration and production business" as provided in subsequent job orders.  Section 8 of the contract specified that Greene's "shall be, and perform at all times as, an independent contractor."  Siren had no contractual relationship with Greene's.

In the spring of 2015, Apache hired Greene's to flush out the Bass Lite pipeline from the Devil's Tower platform to prepare it to be plugged and abandoned.  It was up to Greene's to determine what personnel and equipment it needed to do the job. Greene's was responsible for rigging up and rigging down its equipment under the supervision of a Greene's supervisor who directed the Greene's crew.  Greene's sent a crew of five men, including Mr. Spisak, to Devil's Tower to perform the flushing operation.  Mr. Spisak was employed by Greene's as a helper.  The crew's supervisor was a Greene's employee, Matthew Breaux.  Mr. Spisak reported directly to Mr. Breaux, and Mr. Breaux had ultimate supervisory control over Mr. Spisak's work.

---

[4]     The plaintiff cites 30 CFR § 250.1911(b) as authority to establish culpability for Siren. The Court directs the plaintiff to the same regulation at sub-paragraphs 2 and 3 where the responsibility for creating and signing a JSA does not lie with Mr. Leger in his capacity on this job.

There is no evidence that Mr. Leger or any other employee of Siren had the authority to direct the manner in which Greene's did its work.

The Greene's crew arrived at Devil's Tower on May 6, 2015.  Sometimes utilizing the cranes aboard the platform and sometimes not, they rigged up their equipment and conducted the flushing operation.  On May 18, as he was required to do in his capacity as the immediate supervisor of the crew performing the work, Mr. Breaux prepared a JSA.  It was given to Mr. Leger who prepared a Unit Work Permit that was signed by a representative of Eni and Mr. Brian Ray of Stella Maris detailing the operations of flushing the line with a methanol/water combination.[5]  However, the line hydrated, which created an ice plug such that the flushing operation could not be completed.  At that point, the Greene's crew had to rig down their equipment and prepare to disembark the platform.  Mr. Breaux prepared another JSA which listed "use of crane" as part of the "hazard posed by the energy source."[6]  The record provided to this Court does not contain a separate Unit Work Permit that corresponds with this JSA.  There is no evidence that Mr. Leger was ever made aware of the second JSA from Greene's on May 18 and Mr. Leger's testimony is unrebutted that

---

[5]        Rec. Doc. 111-1, pp. 3-5, 31-32.

[6]        Rec. Doc. 111-1, pp. 1-2.

he did not know that the Greene's crew had begun rigging down at the time of the plaintiff's alleged accident.

Mr. Spisak claims that he was injured during the rig down operation when he and another member of the Greene's crew were carrying a ten-foot-long section of chicksan pipe. Mr. Spisak claims he tripped and was then pushed by the other Greene's employee on the opposite end of the pipe.  Mr. Spisak contends the Greene's crew was denied access to the cranes on the platform for the rig down operations, and therefore, he and other members of the Greene's crew had to carry the chicksan pipe by hand.

The evidence is undisputed that there were cranes aboard the platform available for use by the Greene's crew.  However, other contractors aboard the platform were also utilizing the cranes as simultaneous operations ("SIMOPS") were ongoing. Therefore, if a crane was in use by some other contractor, the Greene's crew would have to simply wait on its availability.  According to Mr. Breaux, the lead rigger was keeping track of who was using the cranes and when Greene's could use them.[7]  The testimony is uncontradicted that Mr. Leger "was not one those supervisors that would

---

[7]        Rec. Doc. 99-6, p. 2.

have – whose job it would have been to coordinate access to the crane with any of those disciplines."[8]

On the date of the alleged accident, Mr. Breaux was advised by Mr. Ray that the crane was in use, that the Greene's crew would not have access to it at that time, and that they would not have access to it until the following day.  According to Mr. Breaux, a decision was made by the Greene's crew not to wait on the availability of a crane, and they continued with the de-rigging process including preparing another JSA.[9]

The plaintiff contends that Mr. Leger failed to generate another Unit Work Permit to correspond with the second JSA such that a crane would be required to be utilized before the work began.  However, there is no evidence that Mr. Leger participated in, or was even aware of, the decision not to wait for the crane which would have been available for Greene's use, albeit at a later time.  There is also no evidence that Mr. Leger received any communication from anyone with Greene's or Stella Maris regarding a need for priority access to the crane.  Finally, there is no evidence that Mr. Leger or anyone employed by Siren had any knowledge of the

---

[8]      Rec. Doc. 120-2,  pp. 3-4.

[9]      Rec. Doc. 99-6, pp. 7-9.  See also Rec. Docs. 99-7, p. 2; 99-4, pp. 7-8.

operations being conducted in the location where the alleged accident occurred prior to its occurrence.

**APPLICABLE LAW AND ANALYSIS**

## A.   THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[10]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[11]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[12]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the

---

[10]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[11]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[12]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

existence of a genuine issue of a material fact.[13]   All facts and inferences are construed in the light most favorable to the nonmoving party.[14]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[15]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[16]

## B.   LOUISIANA LAW GOVERNS THE CLAIMS AGAINST SIREN

Jurisdiction in this case is premised on the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA").[17]   As set forth in this Court's memorandum ruling on the motions for summary judgment concerning the applicable substantive law, pursuant to OCSLA, the law of Louisiana, as the adjacent state, governs the plaintiff's claims against Siren as the controversy arises on a situs covered by the

---

[13]   *Washburn v. Harvey*, 504 F.3d at 508.

[14]   *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[15]   *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[16]   *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[17]   43 U.S.C. §1349.

-8-

OCSLA, maritime law does not apply of its own force, and Louisiana law is not inconsistent with federal law.[18]

## C.   SIREN OWES NO LEGAL DUTY TO THE EMPLOYEES OF GREENE'S

Under Louisiana law, one element essential to the plaintiff's recovery in a negligence action is the existence of a legal duty owed to the plaintiff by the alleged tortfeasor.  "Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. . . [W]here the alleged wrongful conduct of the defendant is a failure to act or 'nonfeasance', courts have found it necessary for some definite relationship between the parties to exist, such that social policy justifies the imposition of a duty to act upon the defendant."[19] Whether a duty is owed is a question of law.[20]

The plaintiff cites *Parta v. Grand Isle Shipyard, Inc.*[21] in support of his position that Siren owed a duty to the plaintiff to intervene and issue a work permit to not allow the rig down to be done without the use of a crane.  This reliance is misplaced

---

[18]     43 U.S.C. 1333(a)*; Union Texas Petroleum v. PLT Engineering, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990).

[19]     *Fox v. Board of Supervisors of La. State Univ.,* 576 So.2d 978, 981 (La. 1991) (citations omitted).

[20]     *Lemann v. Essen Lane Daiquiris, Inc.,* 2005-CC-1095 (La. 03/10/06), 923 So.2d 627, 633.

[21]     No. 06-844, 2008 WL 5262728 (W.D. La. Dec. 17, 2008).

-9-

factually and legally.  In *Parta*, which applied the law applicable to claims under 33 U.S.C. 905(b), the court found that Hercules, a company having a contract with the platform owner, Chevron, did not owe a duty to the employee of a third party, with which it had no contract, to intervene in the decision of the plaintiff's employer to engage in what was contended to be an unsafe procedure.  That is precisely what happened in this case.

The Greene's crew, with what appears to be the input/approval by Mr. Ray of Stella Maris, made a decision not to wait on the availability of the platform crane, but rather to engage in the movement of the chicksan pipe by hand.  Aside from the fact that there is no evidence in this case that Mr. Leger or any other Siren employee had any knowledge of that decision, just as in *Parta*, accepting plaintiff's position would require Siren "to assess (and exercise authority over) the work [Apache] had hired [Greene's] and plaintiff to perform aboard the platform."  Also, just as in *Parta,* the plaintiff has provided this Court with no authority to support such an expansive legal duty.

Consistent with the general maritime law set forth in *Parta,* Louisiana law imposes no affirmative duty to intervene in the unsafe acts of another absent some

special relationship between the parties.[22]  This is particularly so where there is no

contractual privity between the plaintiff and the alleged tortfeasor.[23]  The plaintiff

argues that Siren acted as some type of "gatekeeper" apparently in an effort to

establish a type of special relationship between Siren and Greene's employees.

However, there is no evidence in this record to support such a proposition, and the

mere relaying of information between various disciplines does not create such a

relationship.

## CONCLUSION

The Court finds that Siren has established the absence of any genuine issue of

material fact as to an element of the plaintiff's claim for which the plaintiff bears the

burden of proof.  The plaintiff has not come forward with proof sufficient to create

a genuine issue as to whether Siren owed a duty to him; therefore, the plaintiff's

claims against Siren fail as a matter of law.  Accordingly, Siren's motion for summary

---

[22]     *Strickland v. Ambassador Ins. Co.* 422 So.2d 1207, 1209 (La. App. 1st Cir. 1982)
(duty only arises where special relationship exists such as "carrier and passenger; innkeeper and
guest; shopkeeper and business visitor; jailer and prisoner; and school and pupil"); *In Re FEMA
Trailer Formaldehyde MDL,* 838 F.Supp.2d 497, 506 (E.D. La. 2012) (no duty owed by FEMA
contractor to plaintiffs who resided in emergency housing units to warn of formaldehyde risk).

[23]     *Herrington v. BP Products North America, Inc.,* No. 02-2110, 2003 WL 21362267
at *2 (E.D. La. June 10, 2003) (safety man had no duty to intervene in unsafe operation by contractor
who had no contractual relationship with plaintiff's employer); *Goodie v. Exxonmobile Oil Corp.,*
No. 13-5228, 2014 WL 1764777, at *6 (E.D. La. May 2, 2014) (no duty owed by "safety advisor"
to actively intervene in allegedly unsafe operations of plaintiff employed by another contractor of
platform owner).

judgment (Rec. Doc. 99) is GRANTED, and the plaintiff's claims against Siren are

DISMISSED WITH PREJUDICE.

Signed at Lafayette, Louisiana on this 16th  day of March 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-12-