UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TIMOTHY B. SPISAK | CIVIL ACTION NO. 15-CV-02305 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| APACHE CORPORATION, ET AL. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Currently pending is defendant Stella Maris, LLC's motion for summary judgment. (Rec. Doc. 93). The motion is opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is denied.

### BACKGROUND

The following facts are undisputed. This case arises out of an incident that allegedly occurred in May of 2015 aboard a fixed SPAR oil and gas production platform known as Devil's Tower, which is located on the outer continental shelf off the coast of Louisiana. Devil's Tower has no means of propulsion and is connected to the seabed by a mooring system consisting of chains, cables, and piles or caissons embedded into the ocean floor. Defendant Williams Field Services, LLC is the owner of the platform and defendant Eni US Operating Co. Inc. was the operator at all

relevant times. Apache Corporation[1] is the owner of a well called Bass Lite that was tied into Devil's Tower by pipeline. The well was in the process of undergoing plugging and abandonment operations at the time of the plaintiff's alleged accident.

In July 2005, Apache and Stella Maris, LLC entered into a Master Service Contract, under which Apache hired Stella Maris to perform certain work or render certain services as set forth in separate job orders. Under Section 7 of the contract, Stella Maris was designated as an independent contract not subject to the control or direction of Apache. While Stella Maris controlled the manner and methods by which it performed its work under the contract, Apache was only interested in the compliance of the work with the job order.

In August 2012, Apache and Greene's Energy Group, LLC entered into a Master Service Contract. Under Section 2, Apache hired Greene's to perform certain work to support Apache's "onshore and offshore exploration and production business" as provided in subsequent job orders. Section 8 of the contract specified that Greene's "shall be, and perform at all times as, an independent contractor." Therefore, Greene's was not subject to the control or direction of Apache as to the

---

[1] The plaintiff's claims against Apache Corporation were previously dismissed. (Rec. Doc. 91).

details of the work performed by Greene's. Apache was only interested in whether the work performed by Greene's complied with the job order.

In the spring of 2015, Apache hired Greene's to flush out the Bass Lite pipeline from the Devil's Tower platform to prepare it to be plugged and abandoned. It was up to Greene's to determine what personnel and equipment it needed to do the job. Greene's was responsible for rigging up and rigging down its equipment under the supervision of a Greene's supervisor who directed the Greene's crew. Greene's sent a crew of five men, including Mr. Spisak, to Devil's Tower to perform the flushing operation. Mr. Spisak was employed by Greene's as a helper. The crew's supervisor was a Greene's employee, Matthew Breaux. Mr. Spisak reported directly to Mr. Breaux, and Mr. Breaux had ultimate supervisory control over Mr. Spisak's work. Pursuant to its contract with Apache, Stella Maris assigned Brian Ray to work as Apache's "company man" with regard to the job being performed by the Greene's crew.

The Greene's crew arrived at Devil's Tower on May 6, 2015. Sometimes utilizing the cranes aboard the platform and sometimes not, they rigged up their equipment and conducted the flushing operation. During the process of flushing the line with a methanol/water combination, the line hydrated, creating an ice plug that prevented the flushing operation from being completed. At that point, on May 18, the

Greene's crew had to rig down their equipment and prepare to disembark the platform.

Mr. Spisak claims that he was injured during the rigging down operation when he and another member of the Greene's crew were carrying a ten-foot-long section of chicksan pipe. Mr. Spisak claims he tripped and was then pushed by the other Greene's employee on the opposite end of the pipe. Mr. Spisak contends that the Greene's crew was denied access to the cranes on the platform for the rigging down operation, and therefore, he and other members of the Greene's crew had to carry the chicksan pipe by hand.

The evidence is undisputed that there were cranes aboard the platform available for use by the Greene's crew. However, other contractors aboard the platform were also utilizing the cranes as simultaneous operations ("SIMOPS") were ongoing. Therefore, if a crane was in use by some other contractor, the Greene's crew would have to simply wait on its availability.

On the date of the alleged accident, Mr. Breaux was advised by Mr. Ray that the crane was in use and that the Greene's crew would not have access to it at that time. According to Mr. Breaux, a decision was made by the Greene's crew not to wait on the availability of a crane, and they continued with the de-rigging process.

The plaintiff's claim against Stella Maris centers on Mr. Ray's participation in the decision not to use a crane to lift chicksan pipe during the derigging operation.

## ANALYSIS

### A. THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[2] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[3]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[4] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[3] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[4] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

existence of a genuine issue of a material fact.[5] All facts and inferences are construed in the light most favorable to the nonmoving party.[6]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[7] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[8]

## B. LOUISIANA LAW GOVERNS THE CLAIMS AGAINST STELLA MARIS

Subject-matter jurisdiction in this case is premised on the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA").[9] As set forth in this Court's memorandum ruling on the motions for summary judgment concerning the applicable substantive law, pursuant to OCSLA, the law of Louisiana, as the adjacent state, governs the plaintiff's claims against Stella Maris as the controversy arises on

---

[5] *Washburn v. Harvey*, 504 F.3d at 508.

[6] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[7] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[8] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[9] 43 U.S.C. §1349.

a situs covered by the OCSLA, maritime law does not apply of its own force, and Louisiana law is not inconsistent with federal law.[10]

## C. GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING STELLA MARIS'S POTENTIAL LIABILITY

It is undisputed that Mr. Ray was employed by Stella Maris and that Apache contracted with Stella Maris for the provision of a "company man" – or a representative of Apache – for the pipeline flushing project, but Stella Maris had no contract with Greene's. Thus, there were no contractual duties owed by Mr. Ray to the plaintiff. Stella Maris also argues that it owed no tort-based duty to the plaintiff.

Mr. Ray testified at his deposition that he was hired by Apache to accompany the Greene's crew to the platform for the pipeline flushing operation. (Rec. Doc. 93-2 at 2). He testified that Greene's had the expertise to perform the job, knew how to do the work, and had its own supervisor on site. (Rec. Doc. 93-2 at 4). He stated that it was up to the Greene's supervisor, Matt Breaux, concerning whether the crew would wait to use a crane or proceed with moving equipment manually. (Rec. Doc. 93-2 at 5). According to Mr. Ray, sometimes one company had to wait for access to a crane because of activities being conducted on the platform by other companies. (Rec. Doc. 107-1 at 3-4, 6). He stated that he would have deferred to a decision by

---

[10] 43 U.S.C. 1333(a); *Union Texas Petroleum v. PLT Engineering, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990).

Mr. Breaux to wait for the crane rather than moving pipe by hand. (Rec. Doc. 107-1 at 12). But he also said that he participated in making group decisions concerning the movement of Greene's equipment. (Rec. Doc. 107-1 at 13). When asked whether he had the Greene's crew lift things because "you could not get access to the crane and you had to wait," he replied, "I'm sure we all got out there and moved stuff, yes." (Rec. Doc. 107-1 at 3-4).

The plaintiff testified that Mr. Ray rushed the derigging work. (Rec. Doc. 93-2 at 24-25; Rec. Doc. 107-1 at 30-31). The plaintiff stated that he heard Greene's crew member Beau Cluse ask for a crane, but Mr. Ray did not halt the derigging operation to wait for a crane because he was worried about there being too many people on the platform and wanted to get the derigging finished as soon as possible. (Rec. Doc. 107-1 at 24-28). The plaintiff also testified that all of the orders and directions that his supervisor, Greene's employee Matt Breaux, received came from Mr. Ray. (Rec. Doc. 93-2 at 47). Further, the plaintiff testified that, when the Greene's crew was rigging up their equipment, he heard Mr. Ray say that there was either no crane or no crane operator available and the crew should go ahead and rig up without using the crane. (Rec. Doc. 107-1 at 22). This suggests that the decision to use – or not use – a crane was a decision made by Mr. Ray rather than Mr. Breaux – both during the rigging up and the rigging down operations. The plaintiff also testified that Mr. Ray

worked along with the Greene's crew. (Rec. Doc. 107-1 at 28). Greene's employee Donald Joseph Gennuso similarly testified that Mr. Ray did manual labor along with the Greene's crew (Rec. Doc. 107-1 at 41) and encouraged the crew to hurry up (Rec. Doc. 107-1 at 43).

Mr. Breaux confirmed in his deposition testimony that Mr. Ray was contracted to act as Apache's representative (Rec. Doc. 93-2 at 90) and was the ultimate work authority for the job (Rec. Doc. 107-1 at 46-47). He stated that Mr. Ray would assign a job to him and it was up to him as the supervisor of the Greene's crew to carry out the job. (Rec. Doc. 93-2 at 102). He testified that he told Mr. Ray that using a crane for derigging would make their job easier (Rec. Doc. 107-1 at 48) and Mr. Ray attempted to get access to a crane during Greene's derigging process by communicating with the riggers (Rec. Doc. 93-2 at 96). However, the Greene's crew was unable to get access to the crane because it was being used by others at that time. (Rec. Doc. 107-1 at 48).

This Court finds that there is a genuine issue of material fact concerning the scope of Mr. Ray's authority over Mr. Breaux and the rest of the Greene's crew, particularly with regard to making the decision to wait for a crane or to move chicksan pipe manually. This Court further finds that there is a genuine issue of material fact concerning whether it was Mr. Ray with Stella Maris or Mr. Breaux with

Greene's who decided that the chicksan pipe would be moved without a crane during the derigging operation when the plaintiff was allegedly injured. These factual disputes preclude summary judgment in Stella Maris's favor.

## CONCLUSION

For the foregoing reasons, this Court finds that the moving party, Stella Maris, LLC, is not entitled to summary judgment in its favor. Accordingly,

IT IS ORDERED that Stella Maris's motion for summary judgment (Rec. Doc. 93) is DENIED.

Signed at Lafayette, Louisiana on this 24th day of March 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE